## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **RETA LYNN MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:12-CV-0811-LSC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

The plaintiff, Reta Lynn Mitchell, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits and Supplemental Security Income. Mitchell timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court

"must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) (quoting *Smith v. Schweiker*, 646 F.2d, 1075, 1076 (5th Cir. Unit A June 1981)). Therefore, this court reviews de novo the Commissioner's conclusions of law. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

2

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently engaged in substantial gainful activity;

(2)     whether the claimant has a severe impairment or combination of impairments;

(3)     whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4)     whether the claimant can perform any of his or her past work; and

(5)     whether there are significant numbers of jobs in the national economy that the claimant can perform.

_____

[1]   The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge ("ALJ") determined Mitchell had not engaged in substantial gainful activity, and found she had the severe impairments of degenerative disc disease and disorders of the spine. R. 14. The ALJ concluded Mitchell did not suffer from a listed impairment. R. 16. The ALJ found Mitchell had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with additional postural and environmental limitations. R. 16-17. The ALJ found Mitchell could frequently balance, climb ramps, and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and she was to avoid concentrated exposure to hazards. R. 17. With this RFC, the ALJ found Mitchell was able to perform her past relevant work as a payroll clerk and payroll supervisor. R. 19. Therefore, the ALJ found she was not disabled at step four of the sequential evaluation framework. R. 20.

### III. FACTUAL BACKGROUND

Mitchell filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income on March 17, 2008, and alleges she became disabled on March 15, 2008. R. 12. Mitchell was 49 years old at the time of the ALJ's decision. R. 166. She has a high school education, and past relevant work as a payroll clerk and payroll supervisor. R. 19. Mitchell alleges she is disabled primarily due to chronic back, leg, and hip pain caused by degenerative disc disease. R. 181. She testified that she is unable to work due to constant pain from her back down to her feet, which also causes her to have difficulty

5

concentrating. R. 35-41. She also testified that during the day she could do nothing but shift from sitting, standing, and lying down. R. 44.

The record shows that Mitchell complained of low back pain and underwent conservative treatment during 2003 and 2004. This treatment included pain medication, physical therapy, and joint injections. R. 417-432. In April 2007, Mitchell underwent a magnetic resonance imaging ("MRI") of the lumbar spine, which a neuroradiologist interpreted as showing mild degenerative disc disease, with disc bulges and moderate to advanced facet arthropathy at L4-5 and L5-S1. R. 474. On May 3, 2007, Mitchell underwent a neurological evaluation by Dr. Cunningham. R. 244-47. Her gait, station, and posture were normal, and the muscle strength in her arms and legs was 5/5. R. 246. She had no tenderness to palpation of the neck or back, and full, painless range of motion. R. 246.

Mitchell was treated by Dr. LaTourette for back pain at the Carolinas Center for Advanced Management of Pain on a monthly basis during 2007, 2008, and 2009. R. 294-334, 365-78, 433-73, 476. Examinations showed that Mitchell's back was tender to palpation and her gait was occasionally antalgic, but she generally had 5/5 muscle strength in both legs, intact sensation, and no atrophy or clonus. During this time Mitchell was prescribed various narcotic pain medications including oxycodone, Kadian, and methadone. In addition to pain medication, Dr. LaTourette administered several nerve root block and joint injections, which provided Mitchell some pain relief. For example, on March 26, 2008, Mitchell reported that her last nerve root block decreased her pain over 50% for several

6

months, and in April 2008 she reported a 40 to 45% decrease in her pain. R. 294, 369. An August 7, 2008, x-ray of the lumbar spine showed minimal disc space narrowing in the upper lumbar spine. R. 386. On March 11, 2009, Dr. LaTourette informed Mitchell that he would wean her off of narcotics over a six week period, and then no longer treat her with narcotic pain medications. R. 433.

Mitchell sought treatment from Dr. Messer on May 1, 2009, who noted she had been under chronic pain management care for approximately five years. R. 523. He reported Mitchell had been "tolerating the problem until discharge from pain management." R. 523. On examination, Dr. Messer found Mitchell was in moderate distress that was likely caused by a combination of pain and narcotic withdrawal. R. 523. He noted Mitchell was tearful at times, and could not move freely due to back pain. R. 523. He diagnosed back pain, and prescribed Mobic and MS Contin. R. 523-24. Dr. Messer noted Mitchell would need a referral for pain management care. R. 524.

Mitchell was seen at Carolina Medical Rehabilitation for pain management on May 11, 2009. It was noted she had no distress signs, but on physical examination she appeared uncomfortable and in pain. R. 533. She reported that MS Contin was not effective at reducing her pain, and she was restarted on Methadone. R. 533-34. Mitchell received followup care at Carolina Medical Rehabilitation for pain management on June 23, 2009. Her pain was reported as an eight and one-half, on a scale of one to ten, and Neurontin was added to her pain medications. R. 532. On September 8, 2009, Mitchell reported that

Neurontin helped her symptoms, and her pain was rated as a six. R. 529. On December 15, 2009, Mitchell complained of swelling in her lower extremities, and her pain was rated as an eight. When Mitchell was seen on March 16, 2010, she continued to experience swelling in her feet. R. 537. Her pain was rated as a nine, and it was noted she had been out of pain medications since the previous Sunday. R. 537. Her Neurontin dosage was increased. R. 538.

## IV. ISSUES PRESENTED

Mitchell argues the ALJ's RFC finding is not based on substantial evidence. Mitchell's argument raises the following issues: 1) whether the ALJ erred in failing to base his RFC on a medical source opinion, 2) whether the ALJ improperly relied on an assessment by a State agency nonexamining physician, 3) whether the ALJ erred in failing to credit her testimony of disabling back pain, and 4) whether the ALJ erred in his consideration of her nonsevere impairments.

## V. DISCUSSION

### A.

Although Mitchell acknowledges there is no express requirement for an RFC assessment from a medical source, she argues that one is required as a practical matter to avoid having an ALJ substitute his judgment for that of a physician. Pl.'s Br. 6-7. However, neither the Commissioner's regulations nor the law of this circuit require that an RFC be based upon a medical source statement from a doctor.

The regulations provide that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions.

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

§ 404.1527(d). One of the specifically reserved examples is a claimant's RFC.

> Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.

§ 404.1527(d)(2). Therefore, under the regulations, a claimant's RFC is not a medical opinion, and a doctor's opinion was not required for the ALJ to assess Mitchell's RFC.

The Eleventh Circuit has also recognized that determining a claimant's RFC is a task for the ALJ, and not doctors. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (unpublished) ("[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). It has also found an ALJ's RFC finding can be supported by substantial evidence even if there is no medical source statement in the record. The court in *Green v. Social Security Administration* found the ALJ had properly refused to credit a Physical Capacities Evaluation ("PCE") from the claimant's treating physician. 223 F. App'x 915, 922-23 (11th Cir. 2007) (unpublished). It rejected the claimant's argument that without that PCE, there was nothing in the record upon which the ALJ could base his RFC finding. *Id.* at 923. The court held that other evidence from the claimant's doctors (which did not contain a PCE or RFC assessment) was sufficient to

support the ALJ's finding that the claimant could perform light work. *Id.* at 923-24; *see also Langley v. Astrue*, 777 F Supp. 2d. 1250, 1258 (N.D. Ala. 2011) (holding RFC is not a medical opinion and need not be based upon a doctor's RFC opinion).

In addition, before remanding for further development of the record, a reviewing court must consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.' " *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir.1982) (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. Unit A July 1981)). Therefore, "although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice before [a reviewing court] will remand for further development of the record." *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) (unpublished) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)).

In the present case, there was sufficient medical and other evidence in the record to allow the ALJ to assess Mitchell's RFC. The ALJ supported his RFC finding by citing the treatment records from Dr. LaTourette, which showed Mitchell denied weakness, had full range of motion of the cervical spine, negative straight leg raising exams, and no atrophy. R. 18. The ALJ found Dr. Messer's records showed Mitchell was in no physical distress, had no lower extremity pain, and had normal strength. R. 19. He found the records from Carolina Medical Rehabilitation reported Mitchell was within normal limits in all extremities, and had normal reflexes. R. 19. The ALJ also noted the medical records showed Mitchell's medications had been relatively effective in controlling her symptoms. R. 17.

10

The ALJ also relied on the absence of restrictions placed on Mitchell by her treating doctors. He noted that because Mitchell alleged "totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on [her] by the treating doctor." R. 19. He also found Mitchell had not provided "convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming the symptoms are present 'constantly' or all of the time." R. 19.

For these reasons, the ALJ found the medical evidence "suggests that [Mitchell] can sustain a greater capacity than she described at the hearing." R. 19. He found Mitchell's limitations were accommodated by his RFC finding, and concluded she "has not satisfied her burden to show she cannot work." R. 19.

The medical records before the ALJ document an extensive and continuous treatment history during the relevant time period, and she has not shown there are gaps in the record that result in unfairness or cause prejudice. These records contain sufficient medical evidence to allow the ALJ to determine Mitchell's RFC. In *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987), the court found evidence similar to that which the ALJ discussed in the present case provided substantial evidence to support his RFC finding. The court observed:

> [w]hile the medical evidence indicates Macia experiences pain and limited movement related to her right shoulder and left elbow, there is also evidence she has a normal range of motion in the left shoulder and the left wrist, and the right elbow and wrist are all within normal limits. She has the ability to perform such tasks as dialing a phone, writing, opening a door, buttoning and unbuttoning. She retains the ability to sit or stand and walk about six hours a day and can frequently lift ten pounds. Thus, there was sufficient evidence

from which the ALJ could conclude that Macia was able to perform work which was sedentary in nature.

*Id.*

For these reasons, this Court concludes there was substantial evidence in the record to support the ALJ's RFC finding. Additionally, there has been no showing that the lack of an RFC assessment from a medical source caused unfairness or prejudice to Mitchell.

## B.

Mitchell also takes issue with the ALJ's agreement with the assessment of the State agency nonexamining physician. She argues that the opinions of State agency medical consultants are entitled to little weight. Pl.'s Br. 7. Mitchell cites *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990) to support her argument. *Id.* In *Swindle*, the court stated that a nonexamining doctor's "opinion is entitled to little weight." 914 F.2d at 226 n.3 (citing *Broughton v. Heckler* 776 F.2d 960, 962 (11th Cir. 1985)). In *Broughton*, the court found that a nonexamining physician's report did not provide good cause for discounting the opinion of a treating physician because "we have held that the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." 776 F.2d at 962 (quoting *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)). In *Broughton*, the court found, "the ALJ incorrectly accorded more weight to the nonexamining physician than to the two examining physicians." *Id.* In the present case, however, none of Mitchell's physicians have given opinions as to her RFC.

12

Therefore, the nonexamining physician's conclusions are not contrary to any opinions of Mitchell's treating physicians.

Moreover, under the current regulations, the ALJ is required to consider the findings of State agency medical or psychological consultants, "who are . . . experts in Social Security disability evaluations." *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). The ALJ must explain the weight given to their findings in the same way as with other medical sources. *Id.* The Commissioner has also issued a ruling explaining that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, *3, (S.S.A.). Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). Although not binding on the courts, they are due "great respect and deference where the statute is not clear and the legislative history offers no guidance." *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. April 1981).[2]

In the present case, the opinions of Dr. Hopkins, the State agency nonexamining physician, did not contradict any opinions rendered by Mitchell's treating physicians. Additionally, the ALJ did not rely solely on the opinion of Dr. Hopkins in assessing Mitchell's RFC. As discussed above, the ALJ considered the medical evidence from

---

[2] In *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Mitchell's treating sources in assessing her RFC. Therefore, the ALJ did not err in agreeing with Dr. Hopkins' RFC assessment. His consideration of Dr. Hopkins' opinions was in accordance with the Social Security regulations and rulings.

## C.

Mitchell argues the ALJ erred in failing to credit her testimony of disabling back pain. Pl.'s Br. 7-8. She argues the ALJ based his credibility finding on her abilities to drive to the hearing and to go shopping, rather than the objective medical findings. *Id.* at 8. She asserts "the record does not suggest that she could sustain the mental demands of past semiskilled and skilled work." *Id.*

In this circuit a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.*

14

"[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*. However, the ALJ's credibility determination need not cite "particular phrases or formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Foote*, 67 F.3d at 1562.

The ALJ in the present case found Mitchell had a medically determinable impairment that could reasonably be expected to cause her alleged symptoms. R. 18. But he concluded her allegations were not credible. R. 18. The ALJ articulated a number of reasons why he found Mitchell was not entirely credible.

An ALJ must consider inconsistencies or conflicts between a claimant's testimony and other evidence in evaluating her credibility. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider . . . the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). In the present case, the ALJ found Mitchell's descriptions of her symptoms and limitations had generally been inconsistent. R. 17.

In particular, the ALJ found Mitchell's testimony that she had side effects from her medications was inconsistent with the medical records showing she repeatedly denied adverse side effects from her medications to Dr. LaTourette. R. 17. He also observed that

Mitchell stated she did not visit any friends, but that Dr. LaTourette noted "she will go out on weekends, visit her friend, and use the internet to look for a job." R. 18. The ALJ noted that although Mitchell stated that "she has 'constant pain,' . . . she was capable of driving to her hearing and goes shopping." R. 18. He also observed that pain management clinic treatment records "noted no indications of significant distress in spite of [Mitchell's] proclaimed inability to sit, stand, or walk for any period of time." R. 18.

The ALJ also found Mitchell had made inconsistent statements about working. He observed Mitchell "reported not working since the alleged onset date, but it was noted that [she] was looking for a new job and that she worked for three days at a convenience store." R. 18.

The ALJ found Mitchell's testimony that she drew unemployment "shows that she held herself out as available, willing and able to work." R. 18. Therefore, he found her receipt of unemployment benefits was inconsistent with her allegation of an inability to work. R. 18. The ALJ made clear, however, that while he was "treating the receipt of unemployment benefits as 'some evidence' to negate [Mitchell's] contention of disability," he was "not basing the denial of benefits solely on this issue." R. 18. The ALJ's consideration of Mitchell's receipt of unemployment benefits as a factor detracting from her credibility is consistent with the weight of legal authority. *See Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991) ("A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as

available, willing and able to work."); *Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994) (finding the claimant's receipt of unemployment benefits was inconsistent with her claim of disability); *Turner v. Colvin*, No. 5:12–cv–2648–LSC, 2013 WL 5574920, at *4 (N.D. Ala. Oct.10, 2013) (finding the great weight of legal authority supports finding the receipt of unemployment benefits is a factor undermining a claimant's credibility). Therefore, the ALJ properly found Mitchell's receipt of unemployment benefits detracted from her credibility.

The effectiveness and side effects of medications are factors the regulations require the ALJ to consider in assessing Mitchell's credibility. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The ALJ found that Mitchell's "medications have been relatively effective in controlling [her] symptoms." R. 17. Substantial evidence in the record supports the ALJ's finding. For example, on March 26, 2008, Mitchell reported that her last nerve root block decreased her pain over 50% for several months, and in April 2008 she reported a 40 to 45% decrease in her pain. R. 294, 369. Also, on September 8, 2009, Mitchell reported that Neurontin helped her symptoms, and her pain was rated as a six. R. 529.

In short, the ALJ articulated in detail his reasons for finding Mitchell's allegations of disabling pain not credible. The ALJ's finding was reasonable and is supported by substantial evidence. Therefore, the ALJ's credibility finding may not be disturbed. *Foote*, 67 F.3d at 1562. ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.").

17

**D.**

Mitchell argues the ALJ did not consider the impact of her nonsevere impairments of deep vein thrombosis ("DVT") and depression. Pl.'s Br. 8-9. She argues that consideration of these impairments in combination with her back impairments would further reduce the likelihood that she could sustain employment. *Id.* at 9.

The regulations provide that in order to progress beyond step two, a claimant must have an impairment that significantly limits her ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.") Therefore, the vocational impact of an impairment is the crucial issue in determining whether an impairment is severe at step two. If an impairment does not significantly limit the claimant's "physical or mental ability to do basic work activities," it cannot be found to be a severe impairment at step two. *Id.*

The regulations further provide that it is Mitchell's responsibility to provide evidence showing the presence of an impairment and how it affects her functioning:

> You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled . . . .

18

20 C.F.R. §§ 404.1512(c), 416.912(c). In *Ellison v. Barnhart*, the court emphasized that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." 355 F.3d 1272, 1276 (11th Cir. 2003)

Although Mitchell argues her DVT and depression are severe impairments, she has not shown that they significantly limit her physical or mental ability to do basic work activities. That Mitchell was diagnosed with these diseases is not sufficient to establish the presence of a severe impairment. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard."). Moreover, substantial evidence supports the ALJ's finding that Mitchell's DVT and depression did not significantly limit her ability to do basic work activities.

Although Mitchell has a history of being treated with medication for depression, the ALJ noted she had denied severe mental limitations on several occasions. R. 15. He noted that during a May 2007 neurological examination, Mitchell reported no depressive symptoms or mood swings; had normal attention and concentration; and denied hallucinations or paranoia. R. 15, 245. The ALJ also observed that records from the Carolinas Center for Advanced Management of Pain repeatedly note Mitchell denied depression, anxiety, memory loss, mental disturbances, suicidal ideation, hallucinations, and paranoia; and that her mood and affect was appropriate. R. 15, 296-97, 303, 314, 318, 322, 325, 330, 366, 370, 443, 451, 455, 459. These treatment records provide substantial

19

evidence to support the ALJ's finding that Mitchell's depression was not a severe impairment.

The ALJ found Mitchell's DVT was controlled with medications or other conservative measures, and did not result in any lasting limitation in her ability to perform basic work-related activities. R. 16. The medical records shows that Mitchell had a history of a DVT over twenty years prior to the alleged onset date. R. 262. Then, an ultrasound in June 2007 showed an acute DVT in Mitchell's right leg. R.253, 262, 267-69, 277. After Mitchell was treated with a blood thinner, subsequent ultrasounds revealed no blood clots as of December 2009. 277, 535-36. Therefore, substantial evidence supports the ALJ's finding that Mitchell's DVT did not cause an extended significant impact on her ability to perform basic work-related activities.

But even if the ALJ erred in finding Mitchell's DVT and depression were not severe impairments, any error would be harmless. Because the ALJ found Mitchell's had at least one severe impairment at step two, the specific impairments listed in his step two finding are irrelevant. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). However, when a claimant has several impairments, the Commissioner "has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991).

In the present case, the ALJ considered Mitchell's nonsevere impairments at later steps in the sequential process. At step three the ALJ found Mitchell did not have "an impairment or combination of impairments" that met or medically equaled a listing. R. 16. The Court held in *Jones* that the ALJ's finding that a claimant "does not have 'an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4' " was sufficient evidence to show he had considered the combined effect of the claimant's impairments. *Id.* The ALJ also took into account Mitchell's nonsevere seizure disorder in assessing her RFC. "I have specifically provided for the claimant's seizure disorder by indicating that she must avoid concentrated exposure to hazards." R. 18.

Therefore, the ALJ took into account Mitchell's nonsevere impairments, and considered all of her impairments in combination in reaching his decision. Because he considered Mitchell's nonsevere impairments at later steps, any error in failing to find her DVT and depression were severe impairments would be harmless. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (unpublished) (explaining that failure to find an impairment severe is harmless error if all impairments are considered at later steps).

## VI. CONCLUSION

The court concludes the ALJ's determination that Mitchell is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this

21

decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

Done this 15th day of April 2014.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[160704]

22